Madam Clerk, call the case. 3-17-0-1-7-5, in the name of Marriage of Fannie Lewin, now an Albanian, is to be admitted. Appointed by Jeffers, Reba, and Pierre Lewin. Appointed by Mark Walton. Please proceed. Mr. Clerk, good afternoon, your honors, council. Fannie and Pierre, after some protracted litigation, ended up getting divorced. They reached a marital settlement agreement. By way of some background, the most contested part of the case had to do with a post-marital agreement that was tried, issues tried over four days. And Judge Keith, in that case, had made a ruling and had detailed figures about how much this residence at St. Charles, that it was worth a million dollars. Well, it was a million dollar property, but it had almost a $400,000 mortgage on it. He continued to say that this is a million dollar property, a million dollar property. Fannie ended up with it. When the case settled, we ended up getting the settlement agreement that's quoted, obviously, extensively in the briefs. And what brings us here today is the question of who's to pay the mortgage on St. Charles. These are all legal questions, as our brief indicates, because we filed a petition to clarify and enforce the agreement, because we thought that Pierre had promised to pay the mortgage. Obviously, he disagreed. He moved to strike or dismiss our petition, and that's how we ended up getting up to this court when the trial judge agreed with Pierre. Now, we have a legal question, since it's a 2-6-15 motion that's presented. The trial judge converted it to a 6-19, which I don't think was right, because they didn't really raise an affirmative defense. And we cite some case law that says you don't use 2-6-19 to just rebut somebody else's allegations. You take them under 6-19 or 6-15 as true. Now, basically, I'm old enough to barely remember the Bar Review, and they always told you in the Bar Review course, don't ever put down the parole evidence rule. It's never going to be the answer to any question that's ever on the multistate. Well, that's what we're here for. We've got the parole evidence rule. And without spending a lot of time on it, I think we all know that the basics of it are that you can't vary an agreement that's unambiguous through extrinsic evidence. What we have here, though, is, in our view, a number of exceptions to the rule are actually a situation where the rule doesn't apply. First of all, we say that when you carefully look at the entire content of the document, that it is actually ambiguous as to who pays the mortgage. It's never really specified in words and terms who pays the mortgage. The word mortgage is never used, but the term's pretty clear that any debts, fees, taxes, anything associated with ownership of the property is assigned to Fannie. I don't understand what's ambiguous. All I'm saying is initially, I think you'd have to agree at least that the words the mortgage are not in there. And I think it's important to note that when you look at paragraph 11, which is the paragraph that we say creates the ambiguity, counsel for Pierre knew how to specify talking about mortgage or talking about interest that relates to a mortgage. The fact that it wasn't mentioned in paragraph 17 is, I think, at least part of the equation. I'm not saying it's the whole equation. If you look at paragraph 11, remember that Fannie is going to be taking full title to this property on August 19, 2016, because that's the date of the judgment. Now, paragraph 11 says that Pierre is going to be allowed to acclaim for 2016. It doesn't say only up to August 19, for all of 2016. That includes all allowable deductions, including deductible interest. Our point is, if Fannie is going to have the property from August 19, 2016, would it make any sense that Fannie would be paying a mortgage for the last four and a half months, if Pierre is being allowed to take the mortgage interest deduction? Where do I find that paragraph in the brief? In our brief, in paragraph 11, it's going to be... Well, it's... I just don't have on the bench the attendance. I'm sure it's in the attendance. It's... C-682 of the record. All I have here... I thought it was easier to find. That's why I thought I'd get that. What it basically said, I'll read it. I know you don't like being read to under the rules. I just don't have a separate appendix here in my set of rules. Okay. The point is, respondents should be allowed to claim federal and state income tax purposes for all allowable deductions related to the properties on Brook Forest and St. Charles, including real estate taxes deducted winter. Even the trial judge thought, well, wait a second. Does this mean allowable deductions under the law, or is it just allowable deductions that Pierre would have under the law? It seemed to me that that's already ambiguous. Again, I come back to what is... Why would Pierre be able to get the mortgage interest deduction for the last four and a half months of the year if Fannie has the house and is paying the mortgage herself? I think there's an ambiguity. That was a specific thing where he paid that. He's allowed to deduct something he paid at the time, right? Well, he would have been paying it in the future. I mean, what this means, the way I read this, and I think it's a reasonable reading, is that for the period of time that Fannie would have had the property and been paying the mortgage, if they're correct, then Pierre gets the deduction for what Fannie's paying. That doesn't make sense. Well, it wouldn't be allowable for Pierre under the law. Take that deduction, would it? But remember, it says all allowable deductions related to the properties. It doesn't say allowable just to Pierre. That was one of the questions even the trial judge raised. He thought that that could have created an ambiguity. Well, if allowable deductions related to the property, if he doesn't have the property, he can't take those deductions. Well, I guess I would say that I would agree with you if the wording was allowable deductions if it was allowable to Pierre, but it's just allowable deductions in general. So who gets the allowable deductions? What's the subject? That's why I wanted it in front of me. What's the beginning of that paragraph? It says respondents shall be allowed to claim for federal and state income tax purposes for 2016. So Pierre. Pierre. Yeah, so it says Pierre can only have the allowable deductions related to the property. Well, I think that's too narrow of a reading because it's related to the properties. It's not allowable just to him. But that's just our first argument on the question of whether there's an ambiguity at all. It seems to us that, you know, specifically on this, he's allowed to claim for federal and state income tax purposes for 2016, all allowable deductions, allowable means pursuant to the federal and state income tax purposes, right? That's allowable under the federal and Illinois tax law, isn't that right? Sure it is. But all I'm saying is that by referring to all allowable deductions, that reads to us as if he's getting at least a deduction for a part of the time when Fannie would have been paying it. That's at least some extrinsic evidence of an ambiguity as to who was to pay the mortgage for that year. So, isn't that an abstinence? No, he shall be allowed to claim for federal and state income tax purposes for 2016, all allowable deductions. That's if he's been allowed. If you don't pay that, if you're not an obligated debt, you wouldn't be able to take it off your federal and state income tax. Well, I'm going with the language. I'm not saying what may have happened. It just seems to us that that creates at least enough of a question. Now, if I might move over to my second argument, because right now I'm arguing the first part is that there actually is an ambiguity coming from paragraph 11. I think the bigger problem here is that this court has adopted this provisional admission approach to the parole evidence rule, and this is the rule that says even if the document looks on its face like it is clear, like they argue it is, and you may find it is also, but if extrinsic evidence could show that there is the ambiguity, then the court has to admit the parole evidence provisionally, and then you actually get down to what the intent of the parties was in creating the document. The problem with the judge in this case, I think he picked up on this case out of Chicago that I think they had the thing kind of mushed up or backwards, because if you look at Judge Kelly's order, he specifically says I look at the four corners of the document first, I don't find an ambiguity. Now I have to look at the provisional admission approach, and I have to find an ambiguity before I can use it. Well, that's not right. You have to consider the provisional evidence first, then you decide whether there's an ambiguity or not. So it seems like that's a legal error that the court made in restricting. What's the provisional evidence? The provisional evidence is all of the evidence that the judge created, Judge Keith, when he decided who was going to get brought under the post-marital agreement, that when he did that, that at that point, Fannie understood that she was to get the house. We were going with the settlement from the standpoint that she was going to get the house and that Pierre, who had always paid the mortgage, was still paying the mortgage. In other words, we were starting with the ruling on the post-marital agreement and moving forward to settle everything else that was left. In fact, the agreement depended upon following what Judge Keith had done in terms of how he divided and gave Fannie the house. So if I understand this procedurally, the MSA was voluntarily entered into and agreed to by the parties, correct? Well, there was a fight about that, Judge Appell. Okay. But there was an MSA that was drafted. Well, I guess we have two different things. We have the post-marital agreement that the big fight was over. Judge Keith approved it. That's the one that said Fannie's getting the house worth a million dollars, which it wouldn't have been a million-dollar house because we had this big mortgage. Then the parties reached an ultimate settlement agreement, which you've accurately called the MSA, which would have handled everything else from that point on. But our point is, and that's what Fannie has pled at this point, which I think her facts have to be taken and her reasonable inferences in her favor, that the agreement was the ruling by Judge Keith on the post-marital agreement was the foundation for the ultimate MSA. Now, they may say that that's wrong, but that sounds like an evidence question or a trial question. That's not a 2-6-15 question. You have to take the allegations that we've made. That's what her understanding was, that that was the basis for the MSA was the ruling from Judge Keith. Did the judge rule when he said, I'm going to award the two houses to Fannie and this to Pierre, whatever he said, that's going to be a 50-50 split or a 60-40 or whatever? Was there a way to determine how much of the marital estate each person was to get that would show whether or not this $380,000 for the outstanding mortgage screws up the percentage? I don't believe so, mainly because the ultimate result was, and that's of course what the big fight was over, was Pierre had some business interests that we thought if the agreement, if the post-marital agreement was no good, then that would have been marital property. So that was all non-marital property, and we're really dealing with houses and some kids' issues, and basically there was a settlement that bought out maintenance and child support is how the case ultimately resolved. But there's really nothing that says, to answer your question, either directly or indirectly that I know of. So is the marital, that's why I'm a little confused about the process, does the marital settlement agreement, is it trying to incorporate a ruling by Judge Peay? Well, that's what we say in our allegations, that's what we're saying it did. Now, if they disagree with that, that's not the basis to grant a 2-6-15 motion and kick the case out. That's to be heard on evidence, or with a defense to the petition, not a motion to strike it. You have to take our allegations as true, that it was the basis of the settlement. Yeah, procedurally, I have normal procedures that MSA is entered into, and the court is asked to approve it. True. I mean, normal. Right, which happened here, and the judge approved it, but the question being that two ships passing in the night, each side thought the other one was to pay the mortgage under the way this language was set up. So we've got two lawyers who draft an MSA, or one drafts it, one approves it, and now we're saying our writing is ambiguous? Well, it wouldn't be the first time that lawyers... I know, but I'm just, you know... And one of the biggest assets or liabilities of any marital estate is mortgages. Right, but... Historically, in family law. And where in this marital settlement agreement is there a section called mortgages? Well, I think that's what part of our problem is, because I think we also cite the cases about incompleteness of the document as another exception to parole evidence, and the state is another exception. All these are alleged in our pleadings, and the judge, I think, just... Frankly, what I think he did was he said, I find it clear, and then because I found it clear, I can't even consider the provisional evidence about any of these other arguments. And he just said, you're dumb, but that's why I think we need to go back and let us put on... let them answer the petition, let us put on the evidence. If we lose, we lose. But we at least are entitled to have our day in court not on the basis of the judge saying it's... I've declared not only is it unambiguous, you can't even try to show an ambiguity on provisional admission in order to open the door to them having a full hearing. That's all we're citing. Right, and that's the issue before us. Right, that's all it really comes down to. Okay? You know, in... your agreement, the marital settlement agreement in paragraph 17 said the petitioner shall have, as for free and clear of any claim of a respondent, the former marital residence on St. Charles Place, right? Correct. And the residence at Brookfield, free and clear of any claim of a respondent, correct? Yes, sir. But then it goes on to say, respondent shall have the right to live in and occupy Brookfield residence till such time as he advises the petitioner that he will move to another location. So he got to live there, right? Yeah, and the other... not the property we're talking about in this case. This was the other residence. The party's own two residences. So he was able to live at Brookfield. So Fannie didn't need to be in two places at the same time. Well, she got to own it. Right, she was awarded both. And then here they reached an agreement that he could stay there pending getting a new place, I believe. And until he advised her that he found a new place, right? Right, exactly. That's exactly what happened. So there was no time limitation on winning it? No, not that I recall. Okay, and so he could be living in it for the purpose of, like, 2016 taxes? Right, but we're talking about apples and... no, we're not on apples and oranges. He's living in Brook Forest. In this case, we're talking about the mortgages on the St. Charles property. Right. Okay. And then when, in the other agreement, it says, Fannie shall be responsible for all expenses, debts, and obligations arising out of the ownership of both properties. That's the other paragraph that you claim has the ambiguity, right? Well, I would say that's paragraph 17. I say that that at least does not completely specify who would pay the mortgage, but it's really paragraph 11 stacked against paragraph 17 that we say creates the ambiguity, and at least enough for one to not have had the court on 2615 dismiss because that Oshon case where this court adopted a provisional admission approach, that was a 2615 case, and you said you can't kick out something. You've got to let somebody make their attempt in the lower court to put on their provisional evidence. Here, the judge wouldn't let us even do that because he said he had to find an ambiguity. As I said, he put the cart before the horse. And you don't think mortgages include expenses, debts, or obligations? I would say not only when you look at the entirety of the agreement. When you put paragraph 11 with 17. And the natural results of the fact that it's limited. Again, if they had said 2016 through the time that Fannie takes over full and exclusive possession or as of the date of the judgment, it doesn't say that. It just says 2016, so that's why we're making the argument we are. Anybody have any other questions or honors? Thank you. Okay, thank you. Counsel, you may proceed. Good afternoon, justices. May it please the court, counsel. My name is Mark Walton. I represent the respondent in the case, Peter Muin, who actually is present in the gallery today. I will address paragraph 11 because I think we're missing a big part of that in the discussion and even in the briefs. But I first want to frame the issue because I think there's some fundamental points that, you know, lest we lose sight of the forest for the trees, need to be borne in mind as you evaluate all of these issues. The first is the interplay between Judge Keith and his ruling on the validity of the post-nuptial agreement. And then Judge Kelly's ruling on the challenge to the ambiguity, the alleged ambiguity in the marital settlement agreement. It's fundamental to understand. What's the difference between those two, post-nuptial agreement and MSA? Okay, so the post-nuptial agreement happened shortly after the couple was married. Right. Mr. Muin was about to enter into a fairly... We don't need the background. Yes, yes. The point is, is that... The point is, the question before Judge Keith... They get married, they do an agreement like, oh, hey, we're married here and there's something we ought to agree on. Correct. Correct. So, right, many parties do it before the marriage, right? And that's part of the reason it brought on the challenge. But challenged as it was, Judge Keith ruled that, I think except for the maintenance, which isn't really an issue here, it was in fact valid. Okay, so we got a valid post-nuptial agreement. Exactly. But it's important to understand what he didn't do. And contrary to the position she takes in the briefs, he did not award anybody anything. He didn't say, and by the way, the wife gets the houses. Post-nuptial agreement is agreement between the parties, not between the courts and the parties. Exactly. Rule of law. Now, the question is, he was in making his ruling as to whether the post-nuptial agreement was valid, was we call it objective when we do a written opinion. Right. Off the cuff saying, oh, by the way. Yes. He's making a comment on what that is. Right. Well, what the ruling on the post-nuptial agreement did is it framed for the parties how they were going to proceed in terms of, you know, it's hard to settle a case if you have this looming issue of an agreement between the parties, a post-nuptial agreement that says all the business interests go to the husband, being clear it's non-marital property. Is that valid or not? And, you know, because if it's invalid, you've got to separate those business interests as part of the settlement. If it's valid, you can move on and talk about the real estate and the other assets. It's not covered in the post-nuptial agreement? I'm sorry. It was covered. That's what I'm saying. You needed a ruling on the post-nuptial agreement validity before the parties could meaningfully discuss settlement. So what was left after you had a post-nuptial agreement to settle? Well, the issue of maintenance and support were left to settle. Plus, you know, you have this issue where the parties have two homes. You know, the marital residence, they built the new home before they sold the old home, and the real estate market being what it is. But that was covered in a post-nuptial agreement. Judge Keith ruled on that. He said, hey, the post-nuptial agreement says that the wife gets the marital residence, and, hey, you know what? There's two marital residences here, so she gets both. Okay? Under the agreement.  For example, they could have chosen that the husband would effectively buy the old house from the wife. It's hers. He could give her more money. Correct. Instructed as they were by Judge Keith's ruling on the validity of the post-nuptial agreement. Well, they weren't instructed. They just got a ruling. Well, right, right. But, I mean, that helped frame, you know, the issues for the settlement. In other words, the business interests were off the table. So knowing that, which is what's important in terms of framing issues before the court with the marital settlement agreement, is that Judge Keith didn't award anybody anything. He just said this post-nuptial agreement is valid. So if we're going forward and we're having a trial on property interests, you know, the property division, it's going to be the post-nuptial agreement is valid. So looking at what Judge Keith ruled sheds no light whatsoever on the subsequent marital settlement agreement. I think the opposing counsel is saying, okay, your whole argument is based upon this MSA. Correct. Period. End of story. He's saying you take two paragraphs, 11 and 17. Right. And that is ambiguous that we need a declaration by the trial court as to what it means and whose obligations and rights are affected. Correct. Correct. It's really a deck action, isn't it? If there's an ambiguity. That wasn't the way it was presented. I understand that. But I think that it could be looked at as that. They asked for the court to construe the agreement. Correct. And part of the justification for the claim that it was ambiguous was referenced through paragraph 11. That's the facial ambiguity argument. And that gets me to paragraph 11 because I think we've missed a very important point. Judge, it's on page 16 of the appellant's brief, the actual language. Thank you. I had the benefit of sitting at counsel's table flipping through the brief, but I believe you'll find it on the bottom half of page 16. We're missing a brief then. So follow this. If payments that were made before the marriage was dissolved on August 19th are subject to question as to who can deduct them. Payment comes out of a joint account. Arguably the wife made it. Arguably the husband made it. You need to clarify who gets the deduction for payments that occurred during the calendar year of the divorce up to the judgment. After the judgment, the wife is the sole owner of the house. She's the party that's responsible for making the payments. But that doesn't answer the question. So she clearly gets to deduct the payments that happened after August 19th. You don't even need to address that. That's an allowable deduction. She's the party to pay it. Before the dissolution happened on August 19th, who gets from January 1 to August 19, who gets to take that? That could be part of the settlement. And, in fact, it was in paragraph 11. But here's the important point. It's not ambiguous at all. Paragraph 17, which is the paragraph we're comparing with paragraph 11 to see if there's ambiguity. Paragraph 17, it's not an issue here but the property taxes. Paragraph 17 says that the wife, Fannie, is obligated to pay the second 2015 tax installment, payable in 2016. Okay, so she's clearly, there's no ambiguity there. She's got to pay that second installment, the September installment, if you will, the June having already been paid. Well, paragraph 11 says, the claim both the property tax payment that's allowable to him, this is Pierre, and deductible interest. Well, if this is ambiguous, then to me, when you look at paragraph 17 and see that the wife accepted, agreed to pay the second installment, then one of two things, there's only one of two conclusions that can be reached. One, the wife agreed that the husband could take a tax deduction for something that she paid after the dissolution, which frankly would be illegal because you can't take a deduction for something you didn't pay, okay? Or it means what it appears on its face to say, which is, hey, we're going to clarify, as between husband and wife, who gets to take the tax write-off for the expenses of interest and taxes up to the date of the dissolution, Artist 19. But this is the 2015 taxes that are payable in 2016. Presumably they were married in entirety, you know, 2015. Oh, yeah. But then 11 seems, the ones that are accruing in 2016, because it doesn't say those that are payable in 2016 accrued in 2015. Right. So I don't know. The allowable deduction in calendar year 2016 would be the 2015 taxes that got paid in 2016, okay? And as of the date of the judgment, because that's where we've got to review all this, August 19 of 2016 is when the judgment is entered. So you've paid the June installment on taxes from 2015, but you haven't yet paid the September installment. So the parties agreed in 17 that Fannie, the wife, is going to pay that second installment. But in paragraph 11 we say husband, Pierre, gets the allowable deductions for calendar year 2016, which would mean the first installment, as relates to property taxes, and interest that was paid, actually paid, up through the date of the dissolution, August 19. Well, it doesn't say that. It says just and deductible interest. So we know in paragraph 17 that it seems to say the real estate taxes, the second half is attributable to Fannie, but it doesn't say anything about that interest. Correct. And, again, that gets to the rub of the whole case, which is does paragraph 17, or does it not, require Fannie to pay the mortgage on the St. Charles property? And I don't, first of all, as relates to facial ambiguity, I don't think there's any way to construe that language in all other respects. Fannie shall be responsible for all expenses, debts, and obligations. I don't think there's any way to find that to be ambiguous. So the question is does giving the husband allowable deductions make that ambiguous? And my point is, and I want to try to tie this up and move on to the other, but my point is after August 19th, it's not allowable to the husband. He didn't pay it. Same with the second tax installment. That would not be allowable. So it's a question of who gets the payments that were made up through August 19th, where husband and wife both have arguably equal claim to that deduction. We clarified it with paragraph 11. That doesn't mean that the wife doesn't have to pay the mortgage. But if anything, the fact that she specifically took responsibility for the second tax installment, it suggests that she was responsible also for the mortgage. But that's one shift to one other just sort of global issue, and that is you've got to understand Fannie is not really clear throughout her brief as to specifically what she's asking, what result she wants. But it's important from a procedural aspect. Marriage settlement agreement is a contract to be sure, but it's a special type of contract that has to be approved by the court. It's approved in a judgment. So while parties to a business contract could theoretically come in any time and ask a court to declare that there's a missing provision, we need to supplement, I think it's improper to add terms to a contract, but not so in the marital context. It's part of the judgment. And this is that HALL case that's cited, and really what HALL stands for is it's just a fundamental part. Within 30 days of the judgment that approves the marital settlement agreement, you can come in and raise issues that would result in a modification of the marital settlement agreement. After 30 days, you can't, period. So Fannie wisely says, well, I missed the 30-day, but here's the thing. You can ask the court to construe the agreement as written after 30 days, but that's sort of in the nature of a declaratory judgment. That's okay. A court can say, here's what the agreement says, and here's what it means. What a court can't do after that 30 days is say, oh, you know, parties didn't think about the mortgage. That's missing, so I'm going to address the mortgage issue. That can't happen. There are cases where it does happen because the party, as in the Augustson, I'm sure I'm butchering the pronunciation, case the counsel cites, when they come in within 30 days, in the Augustson case, move to vacate the judgment, which you can do within 30 days, on grounds of mistake. So Augustson, being a mistake case, is a proper example of coming in, saying, hey, there's a mistake. We want you to vacate the judgment and rescind the agreement because we know that the remedy for a mistake, whether it's mutual or unilateral mistake effect, is you rescind the contract. Well, that's not what Fannie's asking for and with good reason because the court didn't have jurisdiction to even intervene that. So the only way that Fannie can succeed in any form of extrinsic evidence argument is that the agreement is complete and, as written, or with the aid of extrinsic evidence, it's ambiguous. So that gets us to the Eshan case, which is really the heart of the argument that's being raised here, and I think that if you look closely at Eshan, what it's saying is you have a preliminary hurdle. You don't just introduce the extrinsic evidence. You first have to point to what extrinsic evidence you're going to rely on and demonstrate to the court that, objectively, that evidence makes what is otherwise a clear provision ambiguous. And so when the court in Eshan says the party that asserts the extrinsic ambiguity is entitled to present to the court objective evidence, the court can even define what that meant, i.e. evidence that cannot be faked and that can be supplied by disinterested third parties. You shrunk the universe of extrinsic evidence that can be considered by the court and that eliminates, clearly, things like Fannie thought. Fannie, it was her understanding. Well, that's not objective evidence. Arguably, Judge Heath and his ruling would be objective evidence, but I think it's pretty clear, and I've certainly argued, that ruling had nothing to do with the settlement agreement. It's just related to is the post-snuff agreement valid or invalid. The parties there were free to do whatever they wanted. And, in fact, there's provisions in the federal settlement agreement, like the payment of $2 million, that are nowhere in Judge Keith's ruling. I just have one last question. Yes. In the language in the post-nuptial agreement, you're saying there's nothing in the language of that that would indicate that there was some mistake was made or that it is ambiguous. No, in fact, it was so many years before that the parties didn't even own the St. Charles residence at that time. They only owned, I don't even know if they owned Brook Forest at that time, but it was several years before. Thank you. Let me start at the end and work backwards. The point about objective evidence and what really is required by the provisional admission approach, I don't think that was ever even argued at this point. And I go back to all we filed was a motion in divorce court to enforce an agreement. I don't think that at the time we did this, and no one on the other side ever moved a strike saying you don't have enough facts like you would in normal L court type of pleadings. So we start out with here's what we think the agreement says that's ambiguous. Here's what Fannie thought. Here's what Judge Keith said. Here's what Fannie thought about what Judge Keith did, and that's where we started working towards an agreement with that as the baseline. The point about whether the evidence may or may not show what the provisional admission approach requires, that's for another day. All we've done at this point is allege a pleading. We'd still be entitled to do discovery and develop evidence. Unlike we had to plead our evidence, we didn't have to plead everything that we had. All we pled was just raise the question for the court. So our view is that if they want to argue that we wouldn't be able to meet the hurdle of what provisional admission requires, that's back in front of Judge Kelly. His problem was he just looked at the agreement and said you can't. I find it unambiguous, which means you lose under four corners, and then you lose under provisional admission because you have to have shown me an ambiguity in order to provisionally admit. So that's where I think the problem lies. That's why we need to go back and have him look at, make them answer, let us see what is developed in terms of what they require or what the courts require for provisional admission. Again, if we can't come up with any of Judge Kelly's rules against us, then that is prerogative, I suppose, on the evidence. But at this point, we need or we should have the opportunity to develop it. Again, back to the language, not to be too repetitive, but there's still a lot of things. And keep in mind that the agreement came from Pierre's counsels, and we were the ones that approved it, but they're the ones that didn't say allowable to Pierre or have a date in 2016 where the deadline would be important. I just want to mention one thing on this point. In their briefs, Judge Kelly did agree with us that this was a proper, we weren't trying to modify, we weren't trying to appeal late, and that all the case law from all the districts say you can go out after the 30 days runs if you're petitioning to enforce a judgment. Obviously, the court has jurisdiction. Even if the judge has to, as part of the enforcement, clarify what the agreement was. That's all we're saying needs to be done through parole evidence and the provisional admission approach. And as far as back to the mistake issue... Is there any time limit on enforcing a judgment? Well, I mean, if we had just sat back and waited and continued... You got a judgment from the court that incorporated the MSA, correct? Correct. But we were in pretty quick. I think it was after one payment and all of a sudden, well, who's paying? And we realized we had a problem right away. So this is not... Certainly, if we'd waited six years and say, well, now you owe us six years of mortgages, then they'd be screaming waiver and estoppel and 14 other things. But we went in right away. There's no time lag, to use that word, between once... The MSA was approved by the court in August, and then it was right there all within a month or so that we realized... It was past the 30 days, I agree, but it was not like it was months or years after. There was a prove-up of the marriage settlement, right? I guess that's what we called it. I think the case had been such a protracted, antagonistic case, the prove-up was more, are you guys okay with this? And everybody had signed it and it was like a one-minute prove-up and that was all I really recall. So there was a... So you appeared in court. Right. What I don't remember is anything along the lines of the judge who approved the settlement going through piecemeal and who's going to pay this, do you guys have an agreement? It was just, is that your signature? Did you go with the vice counsel? The judge was shown to the court. Oh, the judge was shown to the court. Now to say whether the court read every word of it while we were... Was anybody sworn in and put up any witness standings? No, I don't remember. I know I was there. I don't remember it. I remember it being a fairly informal prove-up. Mainly, as I said, not to be crass, but it was... I think everybody was happy at the time that the case was over. It's normal procedure. If I'm honest, we have an MSA, we've got great parties of credit, blah, blah, blah. Each side had two separate law firms. I think the court was pretty well... Unfortunately, we have this issue, and we'd ask the court to rule in our favor and reverse-send the thing back to Judge Kelly, and if they want to make whatever arguments they want to make, that's fine. But under 2615, we should get our day in court. Thank you. Anything else, your honors? Thank you. Thank you. The court will take this matter under advisement, and I will take a rendered decision.